**In the United States District Court
Eastern District of Arkansas
Pine Bluff Division**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 02 2012

JAMES W. McCORMACK, CLERK
By: *BK Johnson*
DEP CLERK

David W. Qualls
Plaintiff, pro se

vs.

5:12-CV-089 SWW

Professional Credit Management
Defendant

This case assigned to District Judge *Wright*
and to Magistrate Judge *Deere*

**Complaint**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Comes now David W. Qualls (hereinafter referred to as "Plaintiff") in the above numbered and styled case complaining of and against Professional Credit Management (hereinafter referred to as "Defendant" or "PCM") and for cause of action would respectfully state the following:

**Introduction**

1) This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act ("FCRA"), **15 U.S.C § 1681**, the Fair Debt Collection Practices Act ("FDCPA"), **15 U.S.C. § 1692**, Arkansas Fair Debt Collection Practices Act ("AFDCPA"), **Arkansas Code Annotated 17-24.501** Venue lies properly in this district pursuant to **28 U.S.C. § 1391(b)**.

2) Jurisdiction of the Court arises under 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and supplemental jurisdiction for the state law claim is afforded by 28 U.S.C. § 1367. Venue in this district is proper in that the Defendant transacts business here and/or the conduct complained of occurred here.

**Parties**

3) Plaintiff is a natural person who resides Jefferson, Arkansas, County of Jefferson.

4) Defendant is a debt collection company with a business address of 500 Washington Avenue, Jonesboro, AR 72401, regularly uses tools of interstate commerce to conduct debt collection activities in the State of Arkansas, and which may be served with process through its registered agent: R. Bryant Marshall, 500 West Washington, Jonesboro, Arkansas 72401

**Statement of Facts**

5) Plaintiff, on or about the date January 04, 2012 pulled his free annual credit report to check his credit rating. Plaintiff noticed that, Defendant PCM was reporting a 715.00 (Seven Hundred fifteen) dollar balance owed to them. Plaintiff was, and remains, unaware of any credit account with Defendant PCM.

6) Plaintiff, upon investigation, and contacting Defendant PCM, was told that the debt was for services rendered by Russellville Gastroenterology Clinic on or about the dates of May 14, 2008 and June 26, 2008.

7) Plaintiff notified Defendant PCM that he had not received services from Russellville Gastroenterology Clinic on those dates.

8) Plaintiff asserts by virtue of Official Military Orders, the he was mobilized for Active Duty For training at Fort Rucker, Alabama, and was out of state at the time of the alleged debt was stated. Furthermore, the Plaintiff asserts that he was covered under TriCare Standard (Humana Military South) and all charges for himself or his spouse should have been covered by TriCare, See Title 10 USC 55 and Title 32 CFR 199.

9) Plaintiff does not acknowledge receipt of initial communication from Defendant PCM, wherefore Plaintiff would have had the opportunity to dispute the validity of the debt and/or request the name of the original creditor if different from the current creditor or the debt would be assumed by Defendant PCM.

10) On or about the date of January 9, 2012 Defendant PCM was presented a Certified Mail, Return Receipt Requested letter disputing the validity of the debt.

(Exhibit A) Defendant PCM ignored the request and did not reply with the requested information, as required under FDCPA 15 U.S.C. § 1692g (a). To date, notice has not been received by Plaintiff which satisfies 15 U.S.C. § 1692g (a)(3-5). The Defendant PCM signed for the letter on 1/09/2012.

11) On or about the date of February 6, 2012 Defendant PCM was presented with a Certified Mail, Return Receipt Requested letter demanding they cease and desist from all collection activities, as the debt was no longer valid under the statute of limitations. (Arkansas Coded Annotated §16-56-106) The Defendant PCM chose to ignore this subsequent letter and continued reporting derogatory information on my credit reports.

12). On or about the date of January 15th 2012, Plaintiff initiated a dispute with Trans Union, a major credit reporting Agency. Defendant PCM had placed a negative trade line in the Plaintiff's Trans Union report with a balance of 715.00 with a "Date Opened" of 12/15/2008.

13) Defendant had placed the negative trade line on Plaintiff's TransUnion consumer credit report representing the account to TransUnion as being 'Open', when in fact an open line of credit did not exist between plaintiff and defendant.

14) Defendant knowingly represented the account to TransUnion as having "1 month" terms, when in fact no such terms existed. Defendant knowingly represented the account as "Assigned to attorney" when upon information and belief Defendant had not referred the account to an attorney. Defendant knowingly represented account as "Seriously past due date" when no contractual obligation, and thus no 'Due Date', existed between Plaintiff and Defendant.

15) On or about the date of January 15th 2012, Plaintiff initiated a dispute with Equifax, a major credit reporting Agency. Defendant PCM had placed a negative trade line in the Plaintiff's Equifax report with a balance of 715.00 with a "Date Opened" of 12/1/2008.

16) Defendant had placed the negative trade line on Equifax consumer credit report representing the account to Equifax as being 'Open', when in fact an open line of credit did not exist between plaintiff and defendant.

17) Defendant knowingly represented the account to Equifax as having "1 month" terms, when in fact no such terms existed. Defendant knowingly represented the account as "Assigned to attorney" when upon information and belief Defendant had not referred the account to an attorney. Defendant knowingly represented account as "Seriously past due date" when no contractual obligation, and thus no 'Due Date', existed between Plaintiff and Defendant.

18) On or about the date of January 15th 2012, Plaintiff initiated a dispute with Experian, a major credit reporting Agency. Defendant PCM had placed a negative trade line in the Plaintiff's Experian report with a balance of 715.00 with a "Date Opened" of 12/1/2008.

19) Defendant had placed the negative trade line on Experian consumer credit report representing the account to Experian as being 'Open', when in fact an open line of credit did not exist between plaintiff and defendant.

20) Defendant knowingly represented the account to Experian as having "1 month" terms, when in fact no such terms existed. Defendant knowingly represented the account as "Assigned to attorney" when upon information and belief Defendant had not referred the account to an attorney. Defendant knowingly represented account as "Seriously past due date" when no contractual obligation, and thus no 'Due Date', existed between Plaintiff and Defendant.

21) On 2/1/2012, Experian provided information to Plaintiff that the Defendant had confirmed the accuracy of Defendant's listing on Plaintiff's Experian consumer credit report.

22) Defendant knowingly verified the listing to Experian as having '1 month' terms, when in fact no such terms existed. Defendant knowingly verified the listing to

Experian as an "Closed" Account, wholly or in part owned by the Plaintiff, Seriously past due/assigned to Attorney, collection agency, or the credit grantors internal collection department.

23) On or about the date of January 15th 2012, Plaintiff initiated a dispute with Equifax, a major credit reporting Agency. Defendant PCM had placed a negative trade line in the Plaintiff's Experian report with a balance of 715.00 with a "Date Opened" of 12/15/2008.

24) On 2/1/2012, Equifax provided information to Plaintiff that the Defendant had confirmed the accuracy of Defendant's listing on Plaintiff's Equifax consumer credit report.

25) Defendant knowingly verified the listing to Equifax as having '1 month' terms, when in fact no such terms existed. Defendant knowingly verified the listing to Equifax as an "Closed" Account, wholly or in part owned by the Plaintiff, unpaid.

26) On or about the date of January 15th 2012, Plaintiff initiated a dispute with TransUnion, a major credit reporting Agency. Defendant PCM had placed a negative trade line in the Plaintiff's Experian report with a balance of 715.00 with a "Date Opened" of 12/15/2008.

27) On 2/1/2012, TransUnion provided information to Plaintiff that the Defendant had confirmed the accuracy of Defendant's listing on Plaintiff's Experian consumer credit report.

28) Defendant knowingly verified the listing to TransUnion as having '1 month' terms, when in fact no such terms existed. Defendant knowingly verified the listing to TransUnion as an "Open" Account, wholly or in part owned by the Plaintiff, unpaid.

29) On or about the date of 1/20/2012 the Plaintiff contacted 1-800-MEDICARE and requested and received summary of benefits reporting that Russellville Gastroenterology was paid by Medicare.

30) Plaintiff alleges that the Defendant PCM did not do due diligence in the investigation, or the reinvestigation of this debt, and willfully misrepresented the amount owed on the account. [15 USC 1692e] § 807(2)(a)

31) On 2/24/2012, Plaintiff accessed his three-bureau credit report from TransUnion, noting that the negative trade line placed by Defendant remained on Plaintiff's Experian and Equifax credit reports.

32) Plaintiff applied for Credit with Iberia Bank on 12/14/2011 and was denied credit in part or wholly on the information the Defendant supplied to the Credit reporting agencies.

33) Defendant applied for credit on 4/15/2011 and was forced to go "Loan Shopping" for a sub-prime auto loan, causing 8 hard pulls on my credit reports, and having to accept 9% interest on an auto loan, when the prime was 3.2.

### First Cause of Action – FDCPA Violations

34) Plaintiff repeats and re-alleges paragraphs 1-29 as though they were fully incorporated herein.
At all times relevant to this claim, Plaintiff was a consumer as that term is defined in FDCPA § 1692a(3).

35) At all times relevant to this claim, Defendant was a debt collector as that term is defined in FDCPA § 1692a(6).

36) At all times relevant to this claim, Defendant was attempting to collect an alleged debt from Plaintiff.

37) <u>Count 1.</u> By actions described in P. 6, 7, 13, 24, Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount and legal status of the debt to Experian.

38) <u>Count 2.</u>  By actions described in P. 8, Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount and legal status of the debt to TransUnion.

39) <u>Count 3.</u> By actions described in P. 19, Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount and legal status of the debt to Equifax/CSC Credit Services.

40) <u>Count 4.</u> By actions described in P. 11, Defendant violated 15 U.S.C. § 1692g(a).

41) <u>Count 5.</u> Defendant violated 15 USC 1692e(10) by using false representation or deceptive means to attempt to collect an alleged debt.

42) <u>Count 6.</u> Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect an alleged debt.

43) <u>Count 7.</u> Defendant violated 15 U.S.C. § 1692g(b) by continuing collection activities on an alleged debt after failing to validate the debt as required by FDCPA 15 U.S.C. § 1692g(b).

44) <u>Count 8.</u> By actions described in P. 6, 7, 13, 24, Defendant violated 15 U.S.C. § 1692g(e)(8) by communicating information that was false or known to be false to Experian.

45) <u>Count 9.</u> By actions described in P. 8, Defendant violated 15 U.S.C. § 1692g(e)(8) by communicating information that was false or known to be false to TransUnion.

46) <u>Count 10.</u> By actions described in P. 19, Defendant violated 15 U.S.C. § 1692g(e)(8) by communicating information that was false or known to be false to Equifax/CSC Credit Services.

**Second Cause of Action – FCRA Violations**

47) Plaintiff repeats and re-alleges paragraphs 1-29 as though they were fully incorporated herein.

48) <u>Count 1.</u> By actions described in P. 6, 7, 13, 24, Defendant violated 15 U.S.C. § 1681s-2 (a)(1)(A) by furnishing information to Experian that was known to be inaccurate.

49) <u>Count 2.</u> By actions described in P. 8, Defendant violated 15 U.S.C. § 1681s-2 (a)(1)(A) by furnishing information to TransUnion that was known to be inaccurate.

50) <u>Count 3.</u> By actions described in P. 18, Defendant violated 15 U.S.C. § 1681s-2 (a)(1)(A) by furnishing information to Equifax that was known to be inaccurate.

51) <u>Count 4.</u> By actions described in P. 19, Defendant violated 15 U.S.C. § 1681s-2 (a)(5)(A).

52) <u>Count 5.</u> By actions described in P. 19, Defendant violated 15 U.S.C. § 1681s-2 (a)(5)(B)(iii).

53) <u>Count 6.</u> By failure to conduct an appropriate investigation of Plaintiff's dispute, Defendant violated 15 U.S.C. § 1681s-2 (a)(8)(E)(i).

54) The defendant knowingly and willfully failed to comply with 15 U.S.C. § 1681 and is liable under 15 U.S.C. § 1681n.

55) Alternatively, the defendant was negligent in failing to comply with 15 U.S.C. § 1681 and is liable under 15 U.S.C. § 1681o.

### Third Cause of Action – AFDCA Violations

56) Plaintiff repeats and re-alleges paragraphs 1-29 as though they were fully incorporated herein.

57) At all times relevant to this cause of action, Plaintiff was a consumer as that term is defined in AFDCA § 17-24-502.(2) and his alleged debt was a consumer debt as that term is defined in AFDCPA § 17-24-502.(B)(4)..

58) At all times relevant to this claim, PCM was a debt collector as that term is defined in AFDCPA § 17-24-502.(5)(a).

59) At all times relevant to this cause of action, PCM was a third-party debt collector as that term is defined in the AFDCPA § 17-24-502.(5)(a).

60) Count 1. Defendant violated Arkansas Code § 17-24-508(a) by continuing collection of an alleged debt after failing to validate an alleged debt.

61) Count 2. By misrepresentation of the character of the debt as described in P 6-8, 13, 18, 19, 24, Defendant violated Arkansas Code § 17-24-506.(1) prohibiting unfair or unconscionable means to attempt to collect a debt.

62) Count 3. By reporting false and harmful information to credit bureaus and by communicating credit information which was known or which should have been known to be false in a willful attempt to damage Plaintiff's credit, Defendant violated Arkansas Code § 17-24-506(5) and Arkansas Code 17-24-506(8).

**Damages**

63) The unlawful conduct alleged above has caused and been a producing cause of actual damages to Plaintiff, including but not limited to damages for mental anguish, injury to Plaintiff's credit reputation, denial of credit, and defamation of character.

**Prayer**

64) For these reasons, plaintiffs pray that this Court:

   A) Award Plaintiff maximum statutory damages under §1692k(a)(2) of the FDCPA, under §1681n of the FCRA, and under §17-24-512(a)(2) of the AFDCPA. $1000.00 per incident for 1 year, $12,000.00

   B) Award Plaintiff punitive damages under 15 U.S.C. §1681(n)(a)(2). As deemed by the court

   C) Award Plaintiff actual damages that have resulted from the defendant's violations of the AFDCPA, FDCPA, and FCRA.

   D) Award the plaintiff costs of court, expenses, and such other relief as they may show themselves entitled to recover.

Respectfully Submitted,

*[signature]*

David W. Qualls
P.O. Box 247
Jefferson, AR 72079

501-215-7194